The next case on our calendar today is 172530, Andrew Findley v. William Barr. Yes, good morning, Your Honor. Good morning, Your Honors. Rajiv Matreja for Petitioner Andrew Findley, and may it please the Court. Your Honors, the question before this Court is quite narrow, and the burden on the government here is quite steep. This case must be transferred to the District Court unless the record conclusively demonstrates that Mr. Findley is not a U.S. citizen. As the Supreme Court has put it, a transfer is required here unless the evidence of Mr. Findley's U.S. citizenship is so inherently incredible as to compel disbelief. Now, that is a very high bar, and the government's evidence that Mr. Findley is a Jamaican citizen is not the airtight case that it needs in order to avoid a transfer. Far from it. Even the Jamaican Embassy has stated that Mr. Findley is not a Jamaican national, and the record contains many pieces of evidence. The Jamaican Embassy gave a very equivocal brief statement that it was not identified as a national of Jamaica during verification interview conducted by the Embassy. I'm not sure that is really a definitive statement, and it followed up saying it won't be issuing a travel document at this time. It's one in a long list of somewhat ambiguous pieces of evidence that have been compiled. So I think that's a bit of an overstatement. Wouldn't you agree? Yeah. Counsel, you have plenty of arguments for the fact that this is uncertain. Don't overstate by saying that Jamaica said he wasn't a citizen. Jamaica didn't say that. Respectfully, Your Honors, I do think that the email from the Jamaican Embassy was clear with respect to Mr. Findley's status in Jamaica, but with that said, to the extent that there are ambiguities around the document, those ambiguities are to be construed in Mr. Findley's favor given the posture that we are in. But as the Court has noted, there is plenty more in the record that supports Mr. Findley's case for being a U.S. citizen. There are multiple government documents as well as a sworn affidavit from Mr. Findley. Let me ask, what was the basis for Mr. Findley's assertion that his birth – or guess maybe – that his birth certificate was destroyed in Hurricane Hugo? Can you tell? Does he know which office it would have been kept in in the Virgin Islands? And that seems really like rampant speculation to me. Is there any factual basis for that? Your Honor, I'm not aware of anything in the record that supports that. I mean, I do think Hurricane Hugo hit the Virgin Islands in 1989, and there was widespread destruction there. I don't have anything concrete that establishes that it's – So this was a guess? This was a guess? I don't know if it's a guess in so much as perhaps a hypothesis, but there's nothing concrete, Your Honor. But the fact that there is no birth certificate from the Virgin Islands or records in the Virgin Islands that support Mr. Findley's claim of being born there doesn't mean that the claim is so inherently incredible as to compel disbelief. When Mr. Findley – Your client is essentially saying it isn't there, but there are any number of possible reasons why it wouldn't be there. I have no idea which of these it might be. Is that really what you're saying? I think that's fair, Your Honor, but again, there's plenty of evidence in the record beyond that. And it's not just Mr. Findley's statements, the affidavit he submitted in 2018 and the statement he gave to the government in 2013. There are also government documents such as the pre-sentence report prepared by the District of Connecticut's probation office, which listed his citizenship as being in the United States. His daughter's birth certificates from March 1995, those are at pages 483 and 484 of the record. Those list his place of birth as Virgin Islands, U.S. The government points out that he identified himself as an alien in his November 2011 sentence reduction motion, right? Your Honor, I don't know if I'd go as far as to say that he did. That's something that his appointed counsel did, and there's nothing in the record to indicate that Mr. Findley had any involvement in that. But more to the point on that document... You're saying his government appointed counsel would have just, out of the blue, identified him as an alien? Your Honor, I'm not sure what exactly happened there, but it is outside the record. And the government merely says with respect to that statement in that filing that it would be unconscionable in that circumstance to allow Mr. Findley to now claim he's a U.S. citizen. But outside of that document, Mr. Findley consistently claimed that he was a U.S. citizen. And unconscionability is not a basis by which the executive can expand its jurisdiction, right? Whether or not Mr. Findley is a U.S. citizen here is a jurisdictional fact that goes to the executive's authority to whether to remove him. And that is why, with respect to every document in the record, all doubts have to be construed in Mr. Findley's favor. But in any event, what you are saying is, yes, there's plenty of evidence that he is not a U.S. citizen. But there's plenty of evidence also on which that might be the other way. And so it is a question of fact for the district court to decide. But all we are concerned with is, is this something on which there is some evidence on one side and some on the other? I take it that's your argument. That's exactly right, Judge Calabresi. And I think because there are facts and there is evidence on both sides of the question here, the statute is clear and the case law is clear that a transfer is appropriate. The Supreme Court made that clear in the Agosto case where you had an instance where the petitioner's story kept changing, including during immigration proceedings. And the court said even if there might be doubts about that story's truth, any challenge to the petitioner's credibility there needed to be made in a district court. And that principle sinks the government here where… Excuse me. Excuse me. You have one minute left. Thank you. Thank you, Your Honor. That principle, I think, sinks the government here where their argument is essentially just that Mr. Findley's evidence cannot be trusted. To that end, I think it's notable here that the first immigration judge in this case, who had less evidence before him of Mr. Findley's U.S. citizenship than is in the record now, nonetheless still held that the government had fallen short of its deep burden to prove Mr. Findley's alienage. And so I think that all but compels the conclusion that a reasonable fact finder could find in Mr. Findley's favor, and that in turn requires this court to transfer the case for further proceedings. Unless the court has any further questions at this time, I'll refer to the rest of my time for rebuttal, please. Very good. You have three minutes for rebuttal. We will hear from the government then. Mr. Youssef. Good morning, Your Honors. May it please the court in all uses for the government. The court should reject the request to transfer to district court and deny the petition for review. The petitioner has failed to demonstrate that there is a genuine issue of material fact here. Is the petitioner correct about the standard? Do you agree that the standard is that if his claim must be shown to be inherently, his claim of citizenship must be shown to be inherently incredible in order for the government to prevail? That's a very unique standard. No, Your Honor. I do disagree with the framing of the standard here. It is true that the court, the transfer is a forgiving standard, but it's still a standard in which the petitioner has to show that a reasonable adjudicator could find for him based on the record and the evidence before this court that he is a citizen. Petitioner has not demonstrated – Don't you agree – I mean, the IJA did find for him. It's a little hard to say that that was an unreasonable adjudication, isn't it? Well, the IJA found that the government did not establish by clear and convincing evidence that the individual was an alien. However, that was remanded by the agency, by the board, sent back because of the IJA's failure to give proper weight to the I-213 document that this court has held and many courts have held is presumptively reliable. Yeah, but that document may be reliable. It adds some more evidence on your side. And isn't – you're really asking us to make a decision that the Supreme Court says belongs to the district court. And, you know, much as I as a court of appeal would love to make all sorts of factual findings all the time, that ain't what we're good at. And that's why these cases go to people who are accustomed to fact finders and who can say how much weight is to be given to the fact that he at one point said, hey, in order to get a lower sentence, I'm not a citizen. How much point is to be said to the fact that the FBI occasionally listed him as a citizen and at other times not? How much – all that stuff is there. Why isn't that typically the kind of thing that this law says goes to the district court? And you may very well win there. Well, Your Honor, I view it – when we're taking a look at the record as a whole, as I stated here, that there has to be – as we argued, there has to be more than a scintilla of evidence to support his claim. And it has to be that a reasonable adjudicator could find in his favor that he is a citizen of the United States. And that affidavit has to be then inherently false. And there are things in the record that support that affidavit. There are things in the record that don't. But does that make it inherently false? I don't know if that makes it inherently false. I think the question is whether there is – the petitioner has presented enough evidence to create a genuine issue of material fact. Is there a dispute? And if looking at the – for example, the Supreme Court in Augusta… The burden – the burden… Wait, wait, Judge Calabresi, please. Go ahead, Judge Calabresi. The burden is on the government to prove alienation. So has he raised enough facts to say that that burden may not have been met? Your Honor, I think – I guess it's the same – it's a flip side of the same coin. The government has to establish by clear and convincing evidence that the petitioner is an alien. The agency determined that the government did establish this. In response, after the government established alienage, the petitioner can then present evidence to rebut that presumption to show that he's a citizen. The petitioner never presented any evidence besides his sworn statement in immigration proceedings. He refused to testify in regards to simply answer questions. Where were you born and what country are you a citizen of? He never pressed his claim in immigration court or during those proceedings. It was simply a matter of did the government establish alienage? The government did and established that he is subject to removal. The petitioner could have presented and created a factual record, created a factual dispute, but aside from his sworn statement that's filed with the opening brief as well as that given to an ICE officer, he hasn't presented anything else. I'd like to discuss – excuse me. I'd like to ask you a couple of questions about the I-213. If I understood correctly, it seemed to be relying on not general business processes, the way a business record would ordinarily be entitled to a presumption of regularity, but the substance of it referred to certain relatives of Mr. Findley who seemed to have very uncertain and vague knowledge, if any, with Mr. Findley's early years and when he came to the United States. It seemed to capture vague hearsay knowledge rather than personal knowledge, potentially, and it's not very persuasive in itself. Is there more in the I-213 that I should be giving weight to? I don't think that the uncertain testimony or statements of unknowledgeable relatives who didn't grow up with Mr. Findley really deserve much credence. Well, Your Honor, I would disagree with that in the fact that the manner in which the ICE officer obtained this information was to look at the call and visitor logs at the prison that the petitioner was held in. And these are individuals that he had recently come into contact with, he had recently spoken with, so clearly there's a familiarity with the petitioner based on the fact that… Well, that doesn't mean that they knew his birth history if they had visited him recently in his middle age. Well, I guess, Your Honor, as the agency noted, that there was no reason and there was no evidence presented to demonstrate why these individuals would make a false statement. No, but it isn't a matter of their making a false statement. It's a matter that, gee, we always thought of him as being born in Jamaica because that's where he grew up. They said they didn't really know the mother. It isn't that they're making a false statement. They're testifying to what they know, but what they know isn't definitive. I mean, again, there's some evidence maybe, but it isn't enough to say that this is something on which we can rely as saying that evidence to the contrary is implausible. Well, Your Honor, I think, again, the question is not whether the petitioner is a Jamaican citizen. The question is whether the petitioner has submitted enough evidence to show that there's a material fact as to a U.S. citizenship claim. I think that's why a transfer would be warranted, if there's enough evidence. Well, if he's not a Jamaican citizen, then all the evidence suggests that he's a Virgin Islander. Nobody has suggested anything else, so that Jamaican citizenship is clearly relevant. Now, you know, there's plenty of evidence, I think, on which one can find that he is a Jamaican citizen, but if that is not there, then what the heck else is he? Hello? Are you there, Judge Calabresi? Yeah. I'm done. Okay. All right. Very good. I guess in response to that, I would say I think the piece of evidence that is really central to this issue in addressing the central issue is the documents from the U.S. Virgin Islands where the government official who manages the birth records and such related records in the U.S. Virgin Islands expressly indicating that no such individual on December 26, 1973, was born. Andrew T. Finley was not the owner of birth records to support his claim to the U.S. Virgin Islands. There is no evidence that he was in the records that he was born in the Virgin Islands. Are we to make anything about this statement that there may be more than one district in the Virgin Islands, or is that sheer speculation? Well, Your Honor, he specifically told the ICE officer that he was born in St. Thomas of the U.S. Virgin Islands. This government official researched the St. Thomas birth record, so that was a direct response to his claim that that's where he was born. So if his affidavits could be taken as true, that claim was directly refuted by the government agency, stating that there was no such record. Isn't there some confusion in the records also about his correct birth date? And that would have governed the response that was proffered by the U.S. Virgin Islands. I believe the Social Security Administration had that the birth date may have been different. However, it's unclear if that same, his, there is no evidence to show that his Social Security number, his Social Security information and that birth date are in any way connected to, say, a birth certificate or a birth record in the U.S. Virgin Islands. I don't believe that. Well, I thought the U.S. Virgin Islands office letters says there's no record of birth found for Andrew Keith Findley with a date of birth of December 26, 1973. So they were looking on that day. They weren't looking more generally, is what that suggests to me in any event. I mean, I guess in terms of, if a petitioner claims his birthday is on that date, the way to verify that, wouldn't that be to check specifically on that date of birth? Yes, but there seems to be some confusion. And one only knows what one is told afterwards, of course. Why don't you take one more minute to finish up, please? Okay, thank you, Your Honor. Aside from the petitioner's statement that he is a U.S. citizen, he has not presented any substantive evidence to create a genuine issue of material fact to warrant transfer, especially when considering evidence presented by the government, including the official letter from the U.S. Virgin Islands, the statements made to relatives, the statements by the relatives, and his affirmative statements regarding alienation in federal district court in which he did state, or at least a filing was made in which he signed, as well as his assistant federal public defender had signed, in which they indicated that the petitioner is subject to an immigration detainer and would be removed. I think it's important to note that that filing was made only 18 months prior to his statement to an ICE officer in which he claimed he was a U.S. citizen. So in an 18-month period, he went from being a Jamaican national who, in order to justify reducing his sentence, to then subsequently after his release and claiming that now he's in fact a U.S. citizen. And I think that more recent evidence demonstrates that the petitioner is not in fact a citizen. All right. Therefore, there doesn't justify transfer. Thank you very much, Mr. Youssef. Thank you. Mr. Petraeus, you have three minutes of rebuttal. Yes, thank you, Your Honors. A few points. Your Honors, with respect to the various pieces of evidence that the government is pointing to, I think as the court's questions show, there are ample questions of fact around each of those pieces of evidence. Maybe a fact finder could properly hold for the government on some of those questions, but at this stage before this court, that's not appropriate. Those doubts all have to be construed in Mr. Finley's favor, which further underscores the need for a transfer. My friend, counsel on the other side, said that outside of the couple of statements that Mr. Finley has made, we haven't presented anything else to support his U.S. citizenship. That's just not right. If you look at the record, it's got multiple pieces of evidence supporting Mr. Finley's claim to having been born in the Virgin Islands. As I mentioned, there's the pre-sentence report at 575 of the record, which the government prepared saying he's a U.S. citizen, and that was from 1999. The state of Connecticut prepared a uniform arrest report in 1996 that lists Mr. Finley's birthplace as the Virgin Islands. That's at page 533 of the record. And Mr. Finley's twin daughter's birth certificates at 483 and 84 of the record also list his birthplace as the Virgin Islands. So there's plenty beyond just the statements that Mr. Finley has made, although the statements that he's made would be enough on their own to justify a transfer in light of what even counsel has said is a forgiving standard. One last point. Judge Calabresi made a comment about how Mr. Finley perhaps made a representation about his alienage in order to get a lower sentence. Just to make sure that the record's clear on this, Mr. Finley's criminal sentence was reduced twice. The first time was in October 2008, and it was done sua sponte after a change in the sentencing guidelines, and the court there observed that Mr. Finley was the subject of an INS detainer. All of that was sua sponte. Mr. Finley's appointed counsel then filed a motion to reduce his sentence three years later after the sentencing guidelines changed again. And that motion did include a sentence that the court and opposing counsel have raised about removability, but it wasn't to explain or to justify a reduction in the sentence. It was just part of the background of Mr. Finley's case, but the actual argument, seeking a reduction in the sentence, focused on just the change in the sentencing guidelines. And the district judge's subsequent reduction of Mr. Finley's sentence was, again, based on the change in the guidelines. There was no suggestion that his sentence was reduced that second time because of removability. So this isn't a situation where Mr. Finley told a certain story to a court in order to get some benefit and got far from it. Unless the court has any... Your time has expired. I think we will close our argument now then. Yes. Thank you, Your Honors. All right. Thank you very much. Thank you both. We will take the matter under advisement.